# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mandell Mitchell, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Whole Foods Market Group, Inc.,<br><br>      Defendant | 1:20-cv-08496-ER<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

    Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

    1.  Whole Foods Market Group, Inc. ("defendant") manufactures, markets and sells chocolate covered ice cream bars with almonds under its Organic 365 brand ("Product").

    2.  Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."[1]

    3.  The cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

    4.  The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.[2]

    5.  New York and the Food and Drug Administration ("FDA") has defined chocolate identically to its dictionary definition – made chiefly from cacao beans with a small amount of optional ingredients. *See* 21 C.F.R. § 163.13(a).

    6.  The optional ingredients include dairy ingredients, sweeteners and flavorings. 21 C.F.R. § 163.124(b).

---

[1] Merriam-Webster, chocolate.
[2] The Free Dicttionary, chocolate.

7. The reason the optional ingredients are restricted is to prevent addition of lower quality ingredients in place of high-quality cacao ingredients.

8. Consumers want and expect that chocolate will be made from cacao beans instead of vegetable oils.

9. Defendant's chocolate covered product is described as "Chocolate & Almond," "dipped in organic chocolate" and containing "Decadent Chocolate Coating."



2

10. However, the fine print of the ingredient list reveals the Product contains a non-de minimis amount of vegetable oils.

**INGREDIENTS:** ORGANIC ICE CREAM: PASTEURIZED ORGANIC MILK, PASTEURIZED ORGANIC CREAM, ORGANIC CANE SUGAR, ORGANIC SUGARED EGG YOLKS (ORGANIC EGG YOLKS, ORGANIC CANE SUGAR), ORGANIC VANILLA EXTRACT, ORGANIC LOCUST BEAN GUM, ORGANIC GUAR GUM. ==ORGANIC CHOCOLATE==: ORGANIC CANE SUGAR, ORGANIC CHOCOLATE LIQUOR, ==ORGANIC EXPELLER PRESSED PALM KERNEL OIL==, ORGANIC COCOA BUTTER, ORGANIC DRY ROASTED ALMONDS, ORGANIC WHOLE MILK POWDER, ORGANIC SOY LECITHIN (EMULSIFIER), ORGANIC VANILLA EXTRACT.

11. Though the "ORGANIC CHOCOLATE" appears to contain "ORGANIC CHOCOLATE LIQUOR" as the second most predominant ingredient, this is immediately followed by "ORGANIC EXPELLER PRESSED PALM OIL."

12. The amount of palm oil in the Product is even greater than the fourth listed ingredient, "ORGANIC COCOA BUTTER."

3

13. Based on industry specifications for chocolate ingredients used here, the amount of palm oil is estimated at approximately thirty percent.

14. Approximately fifteen years ago, a group of the largest confectionery companies sought to re-define chocolate – to remove cacao ingredients and replace them with vegetable oils.

15. Thousands of Americans submitted critical comments, crashing the FDA's website.

16. According to one chocolatier "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. But the taste is not the same, he and others said."[5]

17. The foregoing proposed redefinition of chocolate was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.[6]

18. Gary Guittard, of Guittard Chocolate Co., noted that the result of these changes would be the replacement of cocoa butter's natural, smooth texture with inferior alternatives, such as vegetable fats.

19. Guittard stated that nothing prevents a company from producing a bar with less or no cocoa butter, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than chocolate lies beneath the wrapping."

20. The 2007 effort to substitute vegetable oils for cacao beans was only the most recent effort to sell "chocolate" with lower quality ingredients.

---

[5] Bob LaMendola, Staff Writer, Chocoholics in an Uproar: Don't Change the Recipe, South Florida Sun-Sentinel, Apr. 30, 2007.
[6] Mars US Announces Support for Current Chocolate Standard of Identity, Press Release, September 17, 2007.

21. According to historians of chocolate:

Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history. During the pre-Columbian era, "bones of giants" (possibly vertebrate fossils) sometimes were ground and mixed with chocolate. It is difficult, sometimes, to differentiate between adulteration in the sense of adding external products during the preparation of medicinal or culinary chocolates and adulteration in the sense of "cheating" the consumer. In other instances, however, the intent is clear. Chocolate, being an expensive item, commonly was mixed with a variety of "extenders" to reduce cost and to increase the profits of unscrupulous manufacturers/merchants.[7]

22. Since the front label represents the Product contains "[Organic] Chocolate" and "Decadent Chocolate Coating," consumers will expect only cacao ingredients.

23. To prevent this deception, a blend of cacao ingredients with vegetable oils is required to be labeled as a "milk chocolate and palm oil coating." 21 C.F.R. § 163.155(c).

24. There are several reasons why vegetable oils are required to be disclosed.

25. First, chocolate ingredients are several times more expensive than vegetable oils.

26. Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

27. By using lower-cost ingredients but advertising higher-value ingredients, consumers are paying more and getting less.

28. Second, cacao ingredients provide greater satiety than vegetable oils – it fills you up instead of leaving the consumer feeling like they did not eat anything.

---

[7] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate," in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).

5

29. By replacing a non-de minimis portion of cacao ingredients with vegetable oils, consumers must eat more to feel full.

30. Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of cocoa butter.

31. Vegetable oils – even in amounts as low as five percent – contribute to a waxy and oily mouthfeel and leave an aftertaste.

32. Cocoa butter, according to Jay King, the president of the Retail Confectioners International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

33. Jean Hammond of Kilwin's Ice Cream Shops, stated:

Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

34. Fourth, chocolate has health and nutrition benefits that are absent from vegetable oils.

35. Numerous studies have indicated that the flavonoids in cacao beans – and in chocolate – positively affect the heart and arteries against harmful free radicals.

36. Additionally, cocoa butter does not raise cholesterol or have artery-clogging trans-fats, which are present in vegetable oils and linked to greater incidence of heart disease.

37. Though cocoa butter and vegetable oils both contain fat, the fat in cocoa butter is unsaturated and relatively heart healthy, in contrast to saturated fats in vegetable oils.

38. Consumption of vegetable oils is linked to numerous health problems, like increased chances of heart disease.

39. Consumption of chocolate does not result in elevated levels of cholesterol which is a consequence of vegetable oils.

40. Sixth, chocolate is a natural ingredient, made through fermentation, roasting and grinding of cacao beans, and mixing them with flavorings, dairy ingredients and sweeteners.

41. In contrast, the palm oil used by defendant is a synthetic ingredient, subject to hydrogenation in the presence of chemical catalysts, such as nickel and cadmium.

42. Consumers increasingly avoiding synthetic ingredients and prefer simple ingredients like chocolate to their overly processed counterparts.

43. Consumers of a high-end, premium chocolate covered ice cream bar, sold under the Whole Foods brand, will not be so distrustful to scrutinize the fine print of the ingredient list and uncover the added palm oil.

44. The front label creates no ambiguity about the Product's chocolate content, by the statements, "Dipped in Organic Chocolate," "Chocolate" and "Decadent Chocolate Coating."

45. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

46. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

47. Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

48. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

49. Plaintiff paid more for the Product based on the representations than he would have otherwise paid.

50. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $5.49 for three 3 OZ bars, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

51. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

52. Plaintiff Mandell Mitchell is a citizen of New York.

53. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas.

54. Diversity exists because plaintiff Mandell Mitchell and defendant are citizens of different states.

55. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

56. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of the Product by plaintiff and the experiences identified.

## Parties

57. Plaintiff Mandell Mitchell is a citizen of Bronx, Bronx County, New York.

58. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas, Travis County

59. Defendant operates over five hundred high-end grocery stores, which sell premium and organic groceries.

60. Defendant is responsible for the manufacturing, marketing, distribution and sale of the Product, indicated by its name appearing on the back label.



61. Plaintiff Mandell Mitchell purchased the Product at defendant's stores, including the location at 4 Union Square E S, New York, NY 10003, during 2019 and 2020.

62. Plaintiff bought the Product because he wanted a food which contained chocolate, and he understood this term consistent with its dictionary definition and did not expect vegetable oils.

63. Since the Product is from a premium brand, Plaintiff had no reason to suspect the substitution of vegetable oil for cocoa butter and would not have purchased the Product in the absence of defendant's misrepresentations and omissions.

64. The Product was worth less than what Plaintiff and consumers paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

65. Plaintiff paid more for the Product than he would have paid otherwise.

66. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations about its components and ingredients are consistent with its labeling.

Class Allegations

67. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

68. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

69. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

70. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71. Plaintiff is an adequate representative because his interests do not conflict with other members.

72. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Plaintiff and class members desired to purchase a product which contained chocolate – cacao ingredients – and not vegetable oils in place of cacao ingredients.

78. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

79. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

80. Plaintiff relied on the representations of the Product as containing chocolate – from cacao beans – and did not expect added vegetable oils.

81. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

82. Plaintiff incorporates by reference all preceding paragraphs.

83. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it possessed functional, nutritional, organoleptic, sensory and qualitative attributes which it did not.

84. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector – premium groceries made with the highest quality ingredients.

86. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

87. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

88. The Product did not conform to defendant's affirmations of fact and promises, and due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

89. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

90. Defendant had a duty to truthfully represent the Product, which it breached.

91. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

92. Defendant's representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

93. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchases of the Product.

94. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

95. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

96. Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

## Unjust Enrichment

97. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   May 6, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com