**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mandell Mitchell, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>- against -<br><br>Whole Foods Market Group, Inc.,<br>Defendant | 1:20-cv-08496-ER<br><br>Second Amended Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Whole Foods Market Group, Inc. (“defendant”) manufactures, markets and sells “Chocolate & Almond” ice cream bars, “Dipped in Organic Chocolate [& Organic Almonds],” described as having a “Decadent Chocolate Coating” under its Organic 365 brand (“Product”).



## I. DEFINITION OF CHOCOLATE

2. Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."[1]

3. Dictionary.com defines chocolate as a "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla."[2]

4. The Cambridge Dictionary describes chocolate as "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block, or a small candy made from this."[3]

5. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines chocolate as "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened."[4]

6. To make chocolate, cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

7. The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.

8. This state, and the Food and Drug Administration ("FDA"), adopted these dictionary definitions for chocolate – made from cacao beans with a small amount of optional ingredients, like dairy products, sweeteners and flavorings. See 21 C.F.R. § 163.13(a); 21 C.F.R. § 163.124(b).

9. While a definition draws a sharp boundary around a term to provide meaning, words are also defined by what they exclude.[5]

10. In the context of chocolate, the definitions universally exclude fats from sources

---

[1] Merriam-Webster, chocolate.
[2] Dictionary.com, chocolate.
[3] Cambridge.org, chocolate.
[4] Chocolate definition – Google search.
[5] Carnap and Bar-Hillel.

other than cacao ingredients, *viz*, vegetable oils.[6]

11. Federal and state regulations require that where a food has some chocolate but is supplemented by a non-de minimis amount of chocolate substitutes, it should be disclosed on the front label as "milk chocolate and vegetable oil coating." 21 C.F.R. § 163.155(c).

## II. CONSUMERS EXPECT CHOCOLATE TO BE MADE FROM CACAO BEANS

12. Historians of chocolate note that "Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history."[7]

13. The main adulterants and extenders were starches and vegetable fats.

14. In 2007, a group of the largest confectionery companies sought to re-define chocolate by replacing cacao ingredients with "cocoa butter equivalents" ("CBE"), or vegetable fats.

15. Over thirty-thousand Americans submitted critical comments, crashing the FDA's website.

16. In an interview on National Public Radio ("NPR"), Cybele May, proprietor of a website devoted to reviews of candy, was asked, "if it's labeled chocolate, it has to have cocoa butter in it?"[8]

17. May replied, "Absolutely, and it cannot contain other vegetable oils. It has to be completely from the cocoa bean."

18. The Los Angeles Times reported on the attempted change to the meaning of chocolate.

19. According to an average consumer who was interviewed, "The idea of substituting

[6] Vegetable oils used with cacao ingredients are also referred to as vegetable fats because they are solid at room temperature.
[7] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate," in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).
[8] Rebecca Roberts, An Argument Against 'Healthy' Chocolate, Talk of the Nation, Apr. 24, 2007, NPR; candyblog.net.

vegetable oil for cocoa butter, a natural component of the cocoa bean that is the traditional source of chocolate," "would [make her] feel like [she] was being duped."[9]

20. One chocolatier commented, "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. But the taste is not the same, he and others said."

21. San Francisco-based Gary Guittard, "president of his eponymous, family-owned business [Guittard Chocolate Co.], [saw] this as a battle for the soul of the popular confection."

22. Fran Bigelow, of Seattle's Fran's Chocolates, was asked if she would "ever use vegetable fats and oils instead of cocoa butter in [her] chocolate?," and responded, "No, no, no…we just are fighting to protect the integrity of chocolate," by "educat[ing] consumers."

23. The proposal was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley:

> At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.

24. Recent consumer surveys, including one of over four hundred Americans, reached the same conclusions.

25. Roughly sixty percent of respondents who viewed the Product's front label milk chocolate statements with a chunk of chocolate – expected it would contain more cacao bean ingredients than it did and would not be made with chocolate substitutes.

## III. REASONS WHY CONSUMERS WANT CHOCOLATE FROM CACAO BEANS

26. For several reasons, consumers are misled when "chocolate" replaces chocolate

[9] Jerry Hirsch, The Courage of their Confections, Apr. 14, 2007, Los Angeles Times.

ingredients from cacao beans with vegetable oils.

27. First, cacao ingredients are several times more expensive than vegetable oils.

28. Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

29. Bigelow stated, "there's no benefit to the consumer, but there's a benefit to the manufacturers that are using those vegetable oils or the lower-cost ingredients."

30. Where a "chocolate" product is made with lower-cost ingredients, but advertising higher-value ingredients, consumers pay more and get less.

31. Second, cacao ingredients provide greater satiety than vegetable oils – it fills you up instead of leaving the consumer feeling like they did not eat anything.

32. By replacing cacao ingredients with vegetable oils, consumers must eat more of the "chocolate" to feel full.

33. The result is greater consumption of empty calories.

34. Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of the cocoa butter from chocolate from cacao beans.

35. The substitution of vegetable oils – in amounts as low as five percent – contribute to a waxy and oily mouthfeel and leave an aftertaste.

36. Cocoa butter, according to Jay King, the president of the Retail Confectioners International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

37. Though proponents of the plan to add vegetable oils to chocolate claimed consumers "won't notice if they change it," Jean Hammond of Kilwin's Ice Cream Shops, disagreed:

> Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

38. Fourth, real chocolate has health and nutrition benefits that vegetable oils lack.

39. Numerous studies have indicated that flavonoids in cacao beans positively affect the heart and arteries against harmful free radicals.

40. Vegetable oils raise cholesterol, contain artery-clogging trans-fats and saturated fats, and are linked to higher rates of heart disease.

41. Cocoa butter contains relatively heart-healthy, unsaturated fats, which does not cause elevated cholesterol or greater risks of heart disease.

42. Fifth, chocolate is a natural ingredient, made through fermentation, roasting, and grinding of cacao beans, and mixing them with flavorings, dairy ingredients and sweeteners.

43. Consumers across all demographics increasingly prefer foods that are natural, and avoid synthetic ingredients that are highly processed and made with additives.

44. In contrast, the coconut and palm oils used by Defendant are synthetic, subjected to hydrogenation and interesterification, in the presence of chemical catalysts, such as nickel and cadmium.

## IV. THE "CHOCOLATE" CONTAINS INGREDIENTS INCONSISTENT WITH CHOCOLATE

45. The representations of the Product being "dipped in organic chocolate" and possessing a ""Decadent Chocolate Coating" are at best a "half-truth," because the chocolate contains ingredients not found in real chocolate – "Coconut Oil."

46. are misleading because the Product

47. coating as "Milk Chocolate" is misleading, and at best, a "half-truth," because the chocolate contains ingredients not found in real chocolate – "ORGANIC EXPELLER PRESSED PALM KERNEL OIL."

**INGREDIENTS:** ORGANIC ICE CREAM: PASTEURIZED ORGANIC MILK, PASTEURIZED ORGANIC CREAM, ORGANIC CANE SUGAR, ORGANIC SUGARED EGG YOLKS (ORGANIC EGG YOLKS, ORGANIC CANE SUGAR), ORGANIC VANILLA EXTRACT, ORGANIC LOCUST BEAN GUM, ORGANIC GUAR GUM. ORGANIC CHOCOLATE: ORGANIC CANE SUGAR, ORGANIC CHOCOLATE LIQUOR, ORGANIC EXPELLER PRESSED PALM KERNEL OIL, ORGANIC COCOA BUTTER, ORGANIC DRY ROASTED ALMONDS, ORGANIC WHOLE MILK POWDER, ORGANIC SOY LECITHIN (EMULSIFIER), ORGANIC VANILLA EXTRACT.

**INGREDIENTS:** ORGANIC ICE CREAM: PASTEURIZED ORGANIC MILK, PASTEURIZED ORGANIC CREAM, ORGANIC CANE SUGAR, ORGANIC SUGARED EGG YOLKS (ORGANIC EGG YOLKS, ORGANIC CANE SUGAR), ORGANIC VANILLA EXTRACT, ORGANIC LOCUST BEAN GUM, ORGANIC GUAR GUM. ORGANIC CHOCOLATE: ORGANIC CANE SUGAR, ORGANIC CHOCOLATE LIQUOR, ORGANIC EXPELLER PRESSED PALM KERNEL OIL, ORGANIC COCOA BUTTER, ORGANIC DRY ROASTED ALMONDS, ORGANIC WHOLE MILK POWDER, ORGANIC SOY LECITHIN (EMULSIFIER), ORGANIC VANILLA EXTRACT.

48. Though the "ORGANIC CHOCOLATE" appears to contain "ORGANIC CHOCOLATE LIQUOR" as the second most predominant ingredient, this is immediately followed by "ORGANIC EXPELLER PRESSED PALM OIL."

49. The amount of palm oil in the Product is even greater than the fourth listed ingredient, "ORGANIC COCOA BUTTER."

50. Based on industry specifications for chocolate ingredients used here, the amount of palm oil is estimated at approximately thirty percent.

51. Though the "ORGANIC CHOCOLATE" lists the ingredient in order of predominance by weight, consumers are still not told that the Product's coating contains an appreciable amount of palm oil, in place of cacao ingredients.

52. Consumers of a premium ice cream bar, under the Organic 365 brand, will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is accurate.

53. Guittard stated that nothing prevents a company from producing a bar with less or no cocoa butter, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than chocolate lies beneath the wrapping."

54. Consumers expect that companies – especially larger and respected brands, like Whole Foods – to tell them the truth, not half-truths.

55. Even chocolate aficionados such as Cybele May indicated that expectations for chocolate are so well-established that she "do[es]n't want to have to flip over the chocolate bar to read the ingredients to know what I'm getting. I want to know on the front that it is chocolate with cocoa butter."

56. The front label creates no ambiguity about the Product's chocolate content, by the statements, "Dipped in Organic Chocolate," "Chocolate" and "Decadent Chocolate Coating."

57. Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

58. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

59. Defendant sold more of the Product and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

60. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

61. Plaintiff paid more for the Product based on the representations than he would have otherwise paid.

62. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $5.49 for three 3 OZ bars, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

63. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 (“CAFA”). 28 U.S.C. § 1332(d)(2).

64. Plaintiff Mandell Mitchell is a citizen of New York.

65. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas.

66. Diversity exists because plaintiff Mandell Mitchell and defendant are citizens of different states.

67. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

68. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of the Product by plaintiff and the experiences identified.

Parties

69. Plaintiff Mandell Mitchell is a citizen of Bronx, Bronx County, New York.

70. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas, Travis County

71. Defendant operates over five hundred high-end grocery stores, which sell premium and organic groceries.

72. Defendant is responsible for the manufacturing, marketing, distribution and sale of the Product, indicated by its name appearing on the back label.

73. Plaintiff Mandell Mitchell purchased the Product at defendant's stores, including the location at 4 Union Square E S, New York, NY 10003, during 2019 and 2020.

74. Plaintiff bought the Product because he wanted a food which contained chocolate, and he understood this term consistent with its dictionary definition and did not expect vegetable oils.

75. Plaintiff understood the description as "Decadent" to apply to chocolate and refer to its richness.

76. Since the Product is from a premium brand, Plaintiff had no reason to suspect the substitution of palm (vegetable) oil for cocoa butter and would not have purchased the Product in the absence of defendant's misrepresentations and omissions.

77. The Product was worth less than what Plaintiff and consumers paid and he would not

have paid as much absent Defendant's false and misleading statements and omissions.

78. Plaintiff paid more for the Product than he would have paid otherwise.

79. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations about its components and ingredients are consistent with its labeling.

Class Allegations

80. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

81. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

82. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

83. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

84. Plaintiff is an adequate representative because his interests do not conflict with other members.

85. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

86. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

87. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

88. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Plaintiff and class members desired to purchase a product which contained chocolate – cacao ingredients – and not vegetable oils in place of cacao ingredients.

91. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

92. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

93. Plaintiff relied on the representations of the Product as containing chocolate – from cacao beans – and did not expect added vegetable oils.

94. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

95. Plaintiff incorporates by reference all preceding paragraphs.

96. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it possessed functional, nutritional, organoleptic, sensory and qualitative attributes which it did not.

97. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

98. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector – premium groceries made with the highest quality

ingredients.

99. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

100. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years.

101. The Product did not conform to defendant's affirmations of fact and promises, and due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

103. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

104. Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

Unjust Enrichment

105. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

3. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: July 20, 2021

      Respectfully submitted,

      Sheehan & Associates, P.C.
      /s/Spencer Sheehan
      Spencer Sheehan
      60 Cuttermill Rd Ste 409
      Great Neck NY 11021-3104
      Tel: (516) 268-7080
      Fax: (516) 234-7800
      spencer@spencersheehan.com