UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANDELL MITCHELL, *individually and on behalf of all others similarly situated*,

                                   Plaintiff,

        – against –

WHOLE FOODS MARKET GROUP, INC.,

                                   Defendant.

<u>**OPINION & ORDER**</u>

20 Civ. 8496 (ER)

<u>Ramos, D.J.</u>:

        Mandell Mitchell brings this putative class action against Whole Foods Market Group, Inc. ("Whole Foods" or "the Company"), alleging that the representations regarding chocolate on the label of the Company's ice cream bars are misleading, because the bars' coating contains vegetable oil.  Mitchell seeks injunctive relief and monetary damages for:  (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), which prohibit deceptive business practices and false advertising; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"); (5) fraud; and (6) unjust enrichment.  Mitchell files this action on behalf of a putative class of similarly situated individuals.

        Before the Court is Whole Foods' motion to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  For the reasons set forth below, the motion to dismiss is GRANTED.

---

[1] Unless otherwise noted, citations to "¶ _" refer to Mitchell's Second Amended Complaint ("SAC"), Doc. 20.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background

Whole Foods is a Delaware corporation with a principal place of business in Austin, Texas.  ¶¶ 65, 70.  It operates over 500 high-end grocery stores, which sell premium and organic groceries.  ¶ 71.  Whole Foods manufactures and sells the Company's 365 Everyday Value Organic Chocolate & Almond Vanilla Ice Cream Bars (the "Product").  ¶¶ 1, 72.

In 2019 and 2020, Mitchell, a citizen of Bronx County, New York, purchased the Product at Whole Foods stores, including the location at 4 Union Square S, New York, NY 10003.  ¶¶ 69, 73.

The Product consists of "chocolate & almond vanilla ice cream bars."  ¶ 1.  The representations on the front label state that the Product is "dipped in organic chocolate" and possesses a "decadent chocolate coating."  *Id.*  Photos of the Product's label and its ingredient list, as included in the SAC, are below.



Mitchell alleges that these representations are misleading because the chocolate coating contains ingredients not found in "real chocolate," such as pressed palm kernel oil, which is

identified in the ingredient list on the back label of the Product.  ¶¶ 45–51.  With respect to the

Product's front label, Mitchell alleges that it "creates no ambiguity about the Product's chocolate

content," through the use of statements such as "chocolate," "dipped in organic chocolate," and

"decadent chocolate coating," and that he understood the word, "decadent," to refer to the

chocolate's richness.  ¶¶ 56, 75.  With respect to the ingredient list, Mitchell argues that

consumers of a premium ice cream bar will not examine the fine print of the ingredient list in

order to confirm that the front label is accurate.  ¶ 52; *see also* ¶ 76.

The Product is sold at a "premium price," approximately $5.49 for three bars.  ¶ 62.

Mitchell contends that as a result of the misrepresentations, Whole Foods sold a higher quantity

of the Product and at a higher price.  ¶ 59.  Mitchell further alleges that he, as well as the

proposed class members, would not have bought the Product or would have paid less for it if

they had known the truth.  ¶¶ 60–61, 77–78.  Mitchell alleges that he intends to purchase the

Product again when he can do so with the assurance that the representations about its ingredients

are consistent with its labeling.  ¶ 79.

**B.    Procedural History**

Mitchell filed the instant complaint on October 12, 2020.  Doc. 1.  On March 4, 2021,

Whole Foods requested a pre-motion conference to discuss its anticipated motion to dismiss the

complaint under Rule 12(b) on the following grounds, among others:  (1) Mitchell's claims are

preempted; (2) the Product's labeling is not plausibly deceptive under Sections 349 and 350 of

the GBL because the Product contains chocolate, and the mere presence of other ingredients in

addition to chocolate does not render the label false or misleading; (3) he lacks standing to seek

injunctive relief; (4) the complaint fails to state a claim for fraud because he has not alleged facts

that give rise to a strong inference of fraudulent intent; (5) his claim for express warranty fails

because he did not provide notice of the alleged breach; (6) his implied warranty of merchantability and MMWA claims fail because he does not allege that the Product was not merchantable; and (7) his unjust enrichment claim fails as duplicative of his other claims. Doc. 9. On March 9, Mitchell responded to Whole Foods' letter, noting that he intended to file an amended complaint. Doc. 11. Mitchell filed the First Amended Complaint ("FAC") on May 6. Doc. 14. On May 27, Whole Foods again requested leave to move to dismiss the FAC under Rule 12(b) on the same grounds. Doc. 15. A pre-motion conference was held before the Court on July 13. The Court directed Mitchell to file the SAC, and granted Whole Foods leave to move to dismiss the SAC. Mitchell filed the SAC on July 20. Doc. 20. Whole Foods moves to dismiss the SAC under Rules 9(b) and 12(b)(6).

## II.     LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

### A. New York General Business Law Claims

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce . . . ." While the standard for recovery under Section 350 is specific to false advertising, it is otherwise identical to Section 349. *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021). To state a claim under either Section 349 or Section 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). While plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for their claims, *Cosgrove*, 520 F. Supp. 3d at 575–76, "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quoting *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted)). Plaintiffs must "plausibly allege that a significant portion of the

general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3 (internal quotation marks omitted)).

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). In order to determine whether a reasonable consumer would have been misled by an advertisement, "context is crucial." *Id.* "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* "Although the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive [practice or advertisement] would not have misled a reasonable consumer.'" *Wynn v. Topco Assocs., LLC*, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal citation omitted) (quoting *Fink*, 714 F.3d at 741).

### i.      Violations of Federal Regulations

As Whole Foods argues, the Food, Drug, and Cosmetic Act (the "FDCA"), pursuant to which the United States Food and Drug Administration (the "FDA") issues regulations, does not create a private right of action. *See PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997). While Mitchell contends that he is not pursuing a private action for violations of the FDCA, the parties dispute whether his claims are wholly predicated on purported violations of federal labeling requirements, as opposed to being separately premised on consumer protection grounds.

A plaintiff may not circumvent a lack of a private right of action in one statute by incorporating allegations of its violations into claims pleaded under another statute that does allow for a private right of action. *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 579

(S.D.N.Y. 2021) (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005);

*Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)); *Pichardo v. Only What You Need,*

*Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020) (collecting

cases).

  The Second Circuit has held that "a GBL claim is viable where the plaintiff 'make[s] a

free-standing claim of deceptiveness . . . that happens to overlap with a possible claim' under

another statute that is not independently actionable . . . ." *Nick's Garage, Inc. v. Progressive Cas.*

*Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (quoting *Broder*, 418 F.3d at 200).  Thus, regardless of

whether a defendant's conduct constitutes a violation of FDA regulations, to the extent that the

conduct is inherently deceptive, it supports an actionable claim under the GBL.  *Cosgrove*, 520 F.

Supp. 3d at 576.  Accordingly, where a plaintiff argues that federal labeling regulations constitute

evidence of what consumers expect a product's label to imply about its contents, courts have

generally held that the complaint must adequately allege that "reasonable consumers are aware

of these complex regulations," and that "they incorporate the regulations into their day-to-day

marketplace expectations."  *Wynn*, 2021 WL 168541, at *3; *see, e.g.*, *Twohig*, 519 F. Supp. 3d at

164.  Where there is "no extrinsic evidence that the perceptions of ordinary consumers align with

these various labeling standards," the federal regulations cited by the plaintiff are insufficient to

establish that a consumer is likely to be misled by the alleged lack of conformity with the

regulations.  *Wynn*, 2021 WL 168541, at *3 (quoting *N. Am. Olive Oil Ass'n v. Kangadis Food*

*Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013)); *see also Steele v. Wegmans Food Markets, Inc.*,

472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The point here is not conformity with this or that

standard (which is left to the authorities to regulate) but whether the marketing presentation was

deceptive.").

The SAC contains references to the FDA regulations allegedly related to chocolate.  *See, e.g.*, ¶¶ 8, 11.  Mitchell's allegations rely on the purported violations of these regulations to establish consumer deception under the GBL claims.  *See* ¶ 8 (citing 21 C.F.R. § 163.13(a); 21 C.F.R. § 163.124(b)), 11 (citing 21 C.F.R. § 163.155(c)).  Even assuming that Mitchell's argument that the Product violates the federal regulations is correct, a point that is heavily disputed by Whole Foods,[2] as Whole Foods argues, the SAC does not adequately plead that reasonable consumers are aware of these regulations, nor has Mitchell established that consumers incorporate such regulations into their expectations.  *See* Doc. 22 at 19.  Therefore, the cited federal regulations are insufficient to establish that a reasonable consumer is likely to be misled by the representations regarding chocolate on the Product's label.  *See, e.g.*, *Twohig*, 519 F. Supp. 3d at 164; *Wynn*, 2021 WL 168541, at *3.

Nevertheless, the Court determines that Mitchell arguably alleges certain "free-standing claims of deceptiveness," separate and apart from the Product's alleged failure to comply with the FDCA.  For example, Mitchell also alleges numerous dictionary definitions of chocolate (¶¶ 2–5), comments from consumers and individuals in the chocolate confectionary industry (*e.g.*, ¶¶ 16–23), and consumer surveys (¶¶ 24–25) to support his argument that the representations on the Product's label are misleading.  These allegations are arguably independent of the alleged violations of the federal regulations.  Therefore, the Court proceeds to analyze the claims without

---

[2] The parties debate over whether the Product's labeling complies with applicable FDCA regulations.  The Court need not resolve this issue, because "claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading under GBL §§ 349–50."  *Pichardo v. Only What You Need, Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020).

reliance on the purported violations of the FDCA.  *See Colpitts*, 527 F. Supp. 3d at 580 (collecting cases).[3]

### ii.        The Product's Label[4]

Mitchell argues that the word "chocolate" and the phrases "dipped in organic chocolate" and "decadent chocolate coating" on the Product's label are misleading to a reasonable consumer, because they imply that the Product's coating does not contain any vegetable oil, when, in fact, it contains both chocolate and palm kernel oil.  Doc. 23 at 2; *see also* ¶¶ 45–49, 75 (alleging that the word "decadent" on the Product's front label refers to the richness of the chocolate).  As several district courts have held, this argument fails, because Mitchell does not dispute that the Product's coating contains chocolate and because no reasonable consumer would understand the representations on the Product's label to mean that the coating contained only chocolate.  *See, e.g.*, *Beers v. Mars Wrigley Confectionary US, LLC*, No. 21 Civ. 2 (CS), 2022 WL 493555, at *4 (S.D.N.Y. Feb. 17, 2022) (dismissing substantially similar claims brought by the same attorney arising from the presence of vegetable oils in addition to chocolate in an ice cream bar's coating); *Puri v. Costco Wholesale Corp.*, No. 21 Civ. 1202 (EJD), 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) (same).

*First*, Whole Foods points to a line of decisions granting motions to dismiss complaints brought by the same attorney that represents Mitchell, alleging that vanilla-flavored products labelled "vanilla" were misleading, because they contained other sources of vanilla flavor in

---

[3] Because Mitchell's GBL claims are dismissed, the Court need not address Whole Foods' argument that these claims are expressly preempted by the FDCA.  *See, e.g.*, *Beers v. Mars Wrigley Confectionary US, LLC*, No. 21 Civ. 2 (CS), 2022 WL 493555, at *7 n.8 (S.D.N.Y. Feb. 17, 2022).

[4] Whole Foods argues that Mitchell has not adequately alleged an injury under his GBL claims, because he did not allege the date of purchase, how much he paid for the Product, or how the price of the Product compared to the price of similar products.  Courts have rejected similar arguments, and held that allegations substantially similar to those asserted here adequately alleged an injury.  *See, e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 388 (S.D.N.Y. 2021).

addition to vanilla extract.[5]  Mitchell argues that the line of "vanilla" cases is inapposite, because

they relied on the fact that vanilla is a flavor as opposed to chocolate, which is an ingredient.

Doc. 23 at 8, 10–12.  Contrary to Mitchell's assertion, the Court finds the reasoning applied in

the "vanilla" cases persuasive.  Courts in this district have held that the label "vanilla" on a

product is not materially misleading where the product itself lacks actual vanilla beans or vanilla

bean extract, because "vanilla" may be commonly used as a flavor.  *See, e.g.*, *Colpitts*, 527 F.

Supp. 3d at 582 ("[T]he word 'vanilla' can be used as [ ] both a noun and an adjective, and can

be commonly understood to denote a flavor . . . ."); *Wynn*, 2021 WL 168541, at *4 ("[The

product's front label] makes no representations whatsoever about the source of the vanilla flavor

or the ingredients constituting it . . . ."); *Pichardo*, 2020 WL 6323775, at *5 ("Had Defendant's

label contained other qualifying words, such as 'made with,' 'contains,' or 'vanilla beans,' a

reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or

primary flavor ingredient, but that is not the case here.").  Since the "vanilla" line of cases, courts

have assessed whether the same analytic framework applies to representations regarding other

flavors.[6]

Here, the word "chocolate" and the representations regarding chocolate arguably do not

convey a specific representation about the source of the chocolate flavor.[7]  Like vanilla,

---

[5] *See Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021); *Wynn v. Topco Assocs., LLC*, No. 19 Civ. 11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021); *Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Pichardo*, 2020 WL 6323775.

[6] *See, e.g.*, *Gilleo v. J.M. Smucker Co.*, No. 20 Civ. 2519 (PMH), 2021 WL 4341056, at *6 (S.D.N.Y. Sept. 23, 2021); *Cooper v. Anheuser-Busch, LLC*, No. 20 Civ. 7451 (KMK), 2021 WL 3501203, at *9 (S.D.N.Y. Aug. 9, 2021).

[7] The Court notes that while chocolate is both a flavor and an ingredient, a reasonable consumer could expect that the source of the chocolate flavor was actual chocolate.  *Campbell*, 516 F. Supp. 3d at 385.  As set forth herein, Mitchell does not dispute that the Product's coating contains chocolate, but instead argues that "the chocolate contains ingredients not found in real chocolate."  ¶¶ 45–47.

chocolate can be used as both a noun and an adjective, and can be commonly understood to denote a flavor. *See Colpitts*, 527 F. Supp. 3d at 582.  Furthermore, the Product makes no representations about the ingredients constituting the chocolate flavor, nor does it use language such as "made with" or "contains." *See, e.g.*, *Wynn*, 2021 WL 168541, at *4; *Cosgrove v. Blue Diamond Growers*, No. 19 Civ. 8993 (VM), 2020 WL 7211218, at *3–4 (S.D.N.Y. Dec. 7, 2020); *Pichardo*, 2020 WL 6323775, at *5.  "The absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor," because "'[m]ade with' designates a product as an ingredient." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 383 n.4 (S.D.N.Y. 2021).  Nevertheless, because the Court recognizes that at least certain of the representations regarding chocolate in the instant case use the word as a noun (*i.e.*, an ingredient), rather than an adjective (*i.e.*, a flavor), the Court does not base its decision on the "vanilla" cases.

*Second*, as Whole Foods argues, courts within this Circuit have found that under certain circumstances the use of other ingredients in addition to the ingredient identified on a product's label does not make the label deceptive. *See, e.g.*, *Harris v. Mondelez Glob. LLC*, No. 19 Civ. 2249 (ERK) (RER), 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (dismissing plaintiffs' claim that the addition of alkali diminishes the quality and taste of cocoa and therefore renders the representation "Made With Real Cocoa" misleading where the Oreos did, in fact, contain cocoa, along with other ingredients); *Sarr*, 2020 WL 729883, at *4 (dismissing plaintiffs' claim because it was implausible that a reasonable consumer would interpret "Made with Real . . . Butter" to denote that the mashed potatoes did not also contain additional fats in addition to butter, which was the predominant ingredient); *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18 Civ. 2250 (NGG) (RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019)

11

(same);[8] *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (dismissing plaintiff's claim that a representation that a juice product was "cold-pressed" was misleading where the label did not include the modifier "only" or "exclusively" before "cold-pressed" to indicate that the juice had not undergone any other process in addition to juice-pressing).[9]

Indeed, in two factually identical cases, brought by Mitchell's attorney, the courts found that representations such as "with milk chocolate," "silky smooth," and "Chocolate Almond Dipped Vanilla Ice Cream Bars" on the labels of chocolate-covered ice cream bars did not suggest to the reasonable consumer that the products' coatings were made only or exclusively with chocolate. *See Beers*, 2022 WL 493555, at *4 ("Where a product highlights an ingredient on the front label, other courts have pointed to the lack of modifiers, such as 'only' or 'exclusively,' in assessing the reasonableness of claimed consumer confusion."); *Puri*, 2021 WL 6000078, at *6–7. Moreover, as Whole Foods contends and the courts noted, this was particularly true in the context of ice cream bars coated in chocolate. *See Beers*, 2022 WL 493555, at *4; *Puri*, 2021 WL 6000078, at *7 ("[A] reasonable consumer would know that chocolate must be mixed with some significant amount of fat or oil to create a coating that would solidify around an ice cream bar.").[10]

---

[8] The Court notes that a majority of these cases concerned representations that the products were "made with" certain ingredients, language which is not at issue in the instant case.

[9] Mitchell argues that Whole Foods' reliance on these cases is impermissible in light of the Seventh Circuit's rejection of certain principles enumerated in those cases. Doc. 23 at 11 (citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020)). The *Bell* holding is distinguishable, because it involved a representation that a product was "100% Grated Parmesan Cheese," which could be understood to mean "pure cheese," when it contained additives. *Bell*, 982 F.3d at 482.

[10] Whole Foods' motion includes examples of ice cream bars with coatings containing a mixture of chocolate and oils found on the Internet, Doc. 22 at 10 n.4, of which the Court takes judicial notice. *See, e.g.*, *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (holding that the district court did not abuse its discretion in taking judicial notice of publicly available documents); *Boswell v. Bimbo Bakeries USA, Inc.*, No. 20 Civ. 8923 (JMF), 2021 WL 5144552, at *3 n.2 (S.D.N.Y. Nov. 4, 2021) (taking judicial notice of examples of products found on the Internet).

As Mitchell acknowledges, the Product's coating does contain ingredients from cacao beans. *See* ¶¶ 45–49 ("The representations of the Product being 'dipped in organic chocolate' and possessing a 'Decadent Chocolate Coating' are at best a 'half-truth,' because the chocolate contains ingredients not found in real chocolate"); Doc. 23 at 8 ("Though identifying the Product's coating as 'chocolate' may be partially true, it is also misleading and contrary to GBL §§ 349 and 350 because it contains ingredients inconsistent with chocolate – vegetable oil."). To the extent Mitchell alleges that the chocolate is no longer "real chocolate" as a result of the presence of vegetable oil, the Court does not find this argument persuasive. *See Harris*, 2020 WL 4336390, at *3. Furthermore, as Whole Foods argues, the Product's label does not include any modifiers stating that the coating is "only," "exclusively," or "100%" chocolate, nor does it state anything about the ingredient composition of the Product's coating. *See id.*; *Campbell*, 322 F. Supp. 3d at 341. Thus, the Court finds that a reasonable consumer would not be misled into believing that the Product's coating did not contain any vegetable oils (or that it contained *more* chocolate than it does). *See Beers*, 2022 WL 493555, at *4 (finding that the label did not lead reasonable consumers to conclude anything about the particular form of chocolate, the absence of other ingredients such as vegetable oil, or a greater proportion of chocolate); *Puri*, 2021 WL 6000078, at *6–7 (same).

The cases on which Mitchell relies are inapposite. In *Mantikas v. Kellogg Co.*, the plaintiffs alleged that Cheez-It crackers that were labeled "whole grain" and "made with whole grain" would lead a reasonable consumer to believe that the grain was exclusively, or at least predominately, whole grain, when, in fact, the grain in the product was primarily enriched white flour. 910 F.3d 633, 634 (2d Cir. 2018). The Second Circuit held that although the crackers did contain whole grain, the representations were nonetheless misleading, because they

"communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, *whole* grain." *Id.* at 637 (emphasis in original).  Unlike in *Mantikas*, the representations here do not include any modifiers such as "made with." *See id.* at 638. Moreover, in contrast to *Mantikas*, where the quantity of enriched white flour exceeded the quantity of whole grain, Mitchell has not adequately alleged that the Product's coating contains more vegetable oil than the ingredients from cacao beans. *See id.*  In fact, as Mitchell acknowledges, the ingredient list identifies the ingredients in descending order of predominance by weight in accordance with 21 C.F.R. § 101.4(a)(1):  organic cane sugar, organic chocolate liquor, organic expeller pressed palm kernel oil, and organic cocoa butter. ¶ 47.[11]  Therefore, the Product's coating contains more cacao bean ingredients than oil. ¶¶ 47–49.[12]  Accordingly, the Court finds that *Mantikas* is distinguishable. *See Beers*, 2022 WL 493555, at *5 ("*Mantikas* is also distinguishable where – as here – text on the front label refers to or emphasizes a product's predominant ingredient, even if other ingredients are present. . . . [T]his case – where milk chocolate is in fact the leading ingredient in the coating – is distinguishable from *Campbell* and *Mantikas*." (collecting cases)); *Sarr*, 2020 WL 729883, at *4 (same); *Reyes*, 2019 WL 3409883, at *4 (same).[13]

---

[11] Without factual support other than a reference to "industry specifications for chocolate ingredients," Mitchell alleges that the Product's coating contains 30 percent synthetic palm oil.  ¶¶ 44, 50; *see also* Doc. 22 at 13, 13 n.5.

[12] As the court noted in *Beers*, Mitchell fails to plausibly allege that the vegetable oil was used as a substitute in lieu of cocoa butter in making the chocolate.  *Beers*, 2022 WL 493555, at *3, 6.

[13] Mitchell also relies on several cases in this district following *Mantikas*.  Doc. 23 at 7–8.  The Court finds that these cases are inapposite.  *See Colpitts*, 527 F. Supp. 3d at 582–83 (finding that the word "Smokehouse®" could mislead consumers into thinking that the almonds were prepared by a natural smoking process when the product retained its smoke-flavored taste from added flavors); *Campbell*, 516 F. Supp. 3d at 376 (finding that plaintiff had plausibly alleged that the references to "graham" and "honey" on a product's packaging were likely to mislead a reasonable consumer to believe that whole-grain flour and honey were the predominant flour and sweetener, respectively); *Watson v. Kellogg Sales Co.*, No. 19 Civ. 1356 (DLC), 2019 WL 10734829, at *1 (S.D.N.Y. Oct. 29, 2019) (permitting claims under GBL with respect to the word "graham" in connection with graham crackers).

Therefore, Mitchell fails to plausibly allege that a reasonable consumer would conclude that the representations regarding chocolate on the Product's label imply that the Product's coating did not contain any vegetable oil.

### iii.   The Ingredient List

"In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas*, 910 F.3d at 636 (internal quotation marks and citation omitted).  "[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742.  However, the Second Circuit has held that "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 636 (internal quotation marks and citation omitted).  Thus, "[a]n ingredients list on the back of a package cannot cure a misleading label on the front." *Colpitts*, 527 F. Supp. 3d at 583.  "Applying *Mantikas*, courts have concluded that a plaintiff has plausibly alleged a deceptive statement where packaging falsely states or implies that a prominently mentioned ingredient predominates, when, in fact, that ingredient is secondary. . . . When the ingredients list confirms that the prominently mentioned ingredient does in fact predominate, courts have concluded that the complaint does not plausibly allege a deceptive statement." *Kamara v. Pepperidge Farm, Inc.*, No. 20 Civ. 9012 (PKC), 2021 WL 5234882, at *5 (S.D.N.Y. Nov. 9, 2021).

Mitchell's argument that *Mantikas* precludes reliance on the ingredient list to correct the allegedly misleading representations on the Product's label fails.  The Product's label accurately indicates that the Product's coating contains chocolate.  Furthermore, Mitchell does not dispute that the ingredient list accurately identifies the ingredients in descending order of predominance

by weight and discloses the presence of vegetable oil in the form of palm kernel oil.  ¶¶ 47–49.
Therefore, as Whole Foods argues, unlike the cases relied upon by Mitchell in which the
product's packaging contained misleading representations, the "ingredient list contains more
detailed information about the [P]roduct that *confirms* other representations on the packaging."
*Mantikas*, 910 F.3d at 636 (emphasis in original) (internal quotation marks and citation omitted);
*see also Beers*, 2022 WL 493555, at *5 ("The representation that the Product is a chocolate-
covered ice cream bar 'with milk chocolate' is confirmed, not contradicted by the ingredient list."
(citation omitted)); *Puri*, 2021 WL 6000078, at *7 ("[T]here is no deception to be cured –
[Defendant] makes no representations . . . that would deceive a reasonable consumer into
believing that no vegetable oils are present in the Product's coating . . . .").

     iv. **The Consumer Survey**

   To demonstrate consumer expectations, Mitchell points to consumer survey results
purportedly showing that "[r]oughly sixty percent of respondents who viewed the Product's front
label milk chocolate statements with a chunk of chocolate – expected it would contain more
cacao bean ingredients than it did and would not be made with chocolate substitutes."  ¶¶ 24–25.
As Whole Foods argues, Mitchell does not attach the survey to the SAC, nor does he include any
additional allegations regarding the survey.  Specifically, Mitchell's barebones allegations,
without any factual support, fail to plead what questions were asked and what methodology was
used in the survey.  Furthermore, as Whole Foods notes, it clearly appears that the allegations
regarding the survey are in connection with another product, as the Product's label does not
contain references to "milk chocolate" or any imagery of chunks of chocolate.  Moreover,
Mitchell "does not represent that the consumers in the survey would expect the Product to
contain no vegetable oil, or to contain no other ingredients apart from chocolate made from

cacao bean ingredients." *Beers*, 2022 WL 493555, at *6 (dismissing the same attorney's substantially similar survey results); *see also Puri*, 2021 WL 6000078, at *7 (same).

Contrary to Mitchell's assertion that Whole Foods' challenge to his survey is not proper at the pleading stage, while courts construe the survey in the light most favorable to the plaintiff, they must determine whether it plausibly supports the plaintiff's claim. *See, e.g.*, *Twohig*, 519 F. Supp. 3d at 163 ("adding surveys cannot alone salvage implausible [consumer deception] claims" (quoting *Yu v. Dr Pepper Snapple Group, Inc.*, No. 18 Civ. 6664 (BLF), 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020))); *Pichardo*, 2020 WL 6323775, at *4. Thus, for the reasons set forth above, these allegations regarding the survey are insufficient "to nudge [Mitchell's] claims of consumer deception from possible to plausible." *Puri*, 2021 WL 6000078, at *7.

v. **Consumer Preferences**[14]

Mitchell further alleges that consumers generally prefer chocolate made from cacao beans, as opposed to chocolate made with vegetable oils, because of greater satiety, taste, "mouthfeel," and health and nutritional benefits. ¶¶ 26–44. The Amended Complaints in *Beers* and *Puri* include nearly identical sets of allegations. *Compare* ¶¶ 26–44 *with* Amended Complaint ¶¶ 33–51, *Beers v. Mars Wrigley Confectionary US, LLC*, No. 21 Civ. 2 (CS), ECF No. 19 (S.D.N.Y. June 28, 2021) *and* Amended Complaint ¶¶ 21–38, *Puri v. Costco Wholesale Corp.*, No. 21 Civ. 1202 (EJD), ECF No. 18 (N.D. Cal. May 17, 2021). First, the Court agrees

---

[14] To establish consumer expectations, Mitchell relies on, in part, dictionary definitions of chocolate and comments from consumers and individuals in the chocolate confectionary industry. *See* ¶¶ 2–5; Doc. 23 at 7. As the court found in *Puri*, the dictionary definitions of chocolate are inapposite, because they do not require that a food be made exclusively or primarily from cacao bean ingredients to be called "chocolate." *See Puri*, 2021 WL 6000078, at *6. In addition, as noted in *Puri*, Mitchell's reliance on comments from consumers and individuals in the chocolate confectionary industry is misplaced, as these comments are about chocolate candy, not chocolate coatings. *See, e.g.*, ¶¶ 16–17, 20–23, 29, 36–37, 53, 55; Doc. 23 at 7; *see also Puri*, 2021 WL 6000078, at *7 n.3.

with the *Beers* and *Puri* courts that "it is simply not plausible that a reasonable consumer would purchase and eat chocolate covered ice cream bars for health or nutritive benefits or satiety value." *Puri*, 2021 WL 6000078, at *7. Furthermore, "[e]ven if it were, the Product's packaging makes no claims about health, nutrition, or satiety." *Id.* Second, to the extent that Mitchell's allegations relate to products where cacao bean ingredients are replaced with vegetable oils, Mitchell "has not plausibly alleged that vegetable oils have been used in the Product to 'replace' cacao butter." *Beers*, 2022 WL 493555, at *6; *see, e.g.*, ¶¶ 26, 32, 34. Third, Mitchell has not adequately alleged that the Product's coating has a different taste or "mouthfeel," as the relevant allegations appear to be based on comments from individuals in the chocolate confectionary industry regarding chocolate candy, not chocolate coatings. *See, e.g.*, ¶¶ 34–37. In any event, "nowhere does [Mitchell] allege that the use of vegetable oils in the coating along with the chocolate changed the Product's taste [or] gave it a waxy or oily texture . . . ." *Beers*, 2022 WL 493555, at *7.

Accordingly, Mitchell's claims pursuant to Sections 349 and 350 of the GBL are dismissed.

## B.   Breach of Express Warranty

To assert a breach of express warranty claim under New York law, a plaintiff must allege an "affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Colpitts*, 527 F. Supp. 3d at 585 (quoting *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 112 (2d Cir. 2010)). Specifically, a breach of express warranty claim must allege (1) a material statement amounting to a warranty; (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller; (3) breach of this warranty; and (4) injury to the buyer caused by the

breach. *Cosgrove*, 520 F. Supp. 3d at 585.  Furthermore, an express warranty claim requires that "a buyer must provide the seller with timely notice of the alleged breach of warranty." *Campbell*, 516 F. Supp. 3d at 391 (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Mitchell's only allegations as to notice are that (1) "Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees," and (2) "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several years."[15]  ¶¶ 99–100.  These allegations, unsupported by any specific facts, are insufficient to show that Mitchell provided Whole Foods timely notice of the alleged breach, as he has not adequately pleaded that he, in fact, provided notice.  *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 589–90 (rejecting substantially identical allegations); *Cosgrove*, 520 F. Supp. 3d at 585 n.11 (same); *Campbell*, 516 F. Supp. 3d at 391, 391 n.12 (same).  Therefore, Whole Foods' motion to dismiss Mitchell's claim for breach of express warranty is granted.

### C. Breach of Implied Warranty of Merchantability

Under the New York Uniform Commercial Code, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

---

[15] The parties dispute whether Mitchell's claims fall within the exception to the notice requirement for retail customers.  Moreover, Mitchell contends that the complaint, as well as the FAC and the SAC, constitute sufficient notice.  Here, where Mitchell has not alleged any physical or personal injury, the Court finds that the exception is not applicable.  *Campbell*, 516 F. Supp. 3d at 391 n.11.  Furthermore, Mitchell's argument that the complaint qualifies as sufficient notice has been rejected by other courts in this district.  *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 589–90; *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020).  Because the Court finds that Mitchell failed to provide the requisite notice to assert a breach of express warranty claim, it need not consider the parties' other arguments as to whether he adequately pleads such a claim.

goods of that kind." N.Y. U.C.C. § 2-314(1). "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection . . . ." *Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc.*, No. 14 Civ. 2902 (DF), 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)). Significantly, however, "[a] warranty of merchantability . . . does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *Campbell*, 516 F. Supp. 3d at 392 n.14 (internal quotation marks and citation omitted). "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Id.* (quoting *Marotto v. Kellogg Co.*, No. 18 Civ. 3545 (AKH), 2018 WL 10667923, at *8 (S.D.N.Y. Nov. 29, 2018)).[16]

Pursuant to the U.C.C., the notice requirement applies to claims for breach of implied warranty of merchantability. *See, e.g.*, *Colpitts*, 527 F. Supp. 3d at 591; *Campbell*, 516 F. Supp. 3d at 392. Therefore, for the reasons described above, Mitchell's claim similarly fails for not alleging timely notice. Accordingly, Whole Foods' motion to dismiss Mitchell's claim for breach of implied warranty is granted.

### D.    Magnuson Moss Warranty Act

The MMWA grants relief to a consumer who is damaged by the warrantor's failure to comply with any obligation under a written warranty. *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). Pursuant to the MMWA, a "written warranty" is defined, in part, as "any written affirmation of fact or written promise made

---

[16] Because Mitchell did not adequately plead notice, the Court need not resolve the parties' dispute as to whether his failure to allege that the Product was unfit for human consumption was fatal to his claim. *See Campbell*, 516 F. Supp. 3d at 392 n.14.

in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). As Whole Foods contends,[17] and contrary to Mitchell's arguments, the representations on the Product's label "do not suggest that the [Product is] defect free or that [it] will meet a specified level of performance over a specified period of time; instead, they simply describe the product." *Campbell*, 516 F. Supp. 3d at 393 (collecting cases).[18] Therefore, Whole Foods' motion to dismiss Mitchell's MMWA claim is granted.

###    E.    Fraud

To state a claim of common law fraud under New York law, a plaintiff must allege that the defendant made "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). "A claim for common law fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)," *id.* at 402–03, which requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Specifically, to meet this requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

---

[17] Because the Court finds that there is no "written warranty" within the meaning of the MMWA, it need not reach the parties' arguments as to whether Mitchell's MMWA claim necessarily fails as a result of his failure to state a claim for breach of express or implied warranty under state law.

[18] Notably, the case Mitchell cites is inapposite, as it concerns insect repellent with instructions regarding performance over a specified period of time. *See* Doc. 23 at 23 (citing *Bourbia v. SC Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019)).

fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing

*Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

While a fraud claim may plead scienter generally, the plaintiff "must still allege facts that

give rise to a strong inference of fraudulent intent." *Colpitts*, 527 F. Supp. 3d at 585 (quoting

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020)).  This inference

may be established by (1) "alleging facts to show that defendants had both motive and

opportunity to commit fraud," or (2) "alleging facts that constitute strong circumstantial evidence

of conscious misbehavior or recklessness."  *Id.* (quoting *Duran v. Henkel of Am., Inc.*, 450 F.

Supp. 3d 337, 353 (S.D.N.Y. 2020)).

As Whole Foods argues, Mitchell's allegations fail to meet the heightened pleading

standard under Rule 9(b).[19]  Mitchell's sole allegation regarding Whole Foods' intent is that its

"fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not

doing so would mislead consumers."  ¶ 104.  This conclusory allegation, devoid of particularized

facts giving rise to an inference of scienter, is insufficient, because "[t]he simple knowledge that

a statement is false is not sufficient to establish fraudulent intent, nor is a defendants'

'generalized motive to satisfy consumers' desires [or] increase sales and profits.'"  *Davis v. Hain

Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc.

All Nat. Litig.*, No. 12 MD 2413 (RRM) (RLM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29,

2013)).  Courts have found allegations of this nature insufficient under Rule 9(b).  *See, e.g.*,

*Campbell*, 516 F. Supp. 3d at 390–91 (finding similar language insufficient to plead fraudulent

intent); *Colpitts*, 527 F. Supp. 3d at 585 (same); *Hesse*, 463 F. Supp. 3d at 472–73 (finding

---

[19] The parties dispute whether the FAC sufficiently alleges other circumstances constituting fraud, including the timing of purchases, the price at which purchases were made, and which portions of the label were reviewed in making purchases.  Because the Court finds that Mitchell did not adequately plead fraudulent intent, it need not consider these arguments.

plaintiffs' conclusory allegations that defendant knew or recklessly disregarded the truth and intended that plaintiffs rely on its representations insufficient).  "Moreover, while the existence of accurate information regarding the product's ingredients on the package does not stymie a deceptive labelling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud."  *Campbell*, 516 F. Supp. 3d at 391.  Here, there is no dispute as to whether the Product's ingredient list accurately discloses the presence of vegetable oil in the Product's coating.  Therefore, Whole Foods' motion to dismiss Mitchell's fraud claim is granted.

### F.    Unjust Enrichment

To establish a claim for unjust enrichment under New York law, the plaintiff must allege that (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) it would be inequitable to permit the defendant to retain what the plaintiff is seeking to recover.  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011).  However, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Campbell*, 516 F. Supp. 3d at 394 (quoting *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016)).  Furthermore, "an unjust enrichment claim will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Id.* (quoting *Hesse*, 463 F. Supp. 3d at 473–74 (internal quotation marks and citation omitted)).  "If a plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects."  *Izquierdo*, 2016 WL 6459832, at *10 (internal quotation marks and citation omitted).

As Whole Foods argues, Mitchell's unjust enrichment claim is duplicative of his other claims.  The allegations underlying his claim state:  "Defendant obtained benefits and monies

because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits."  ¶ 105.  Accordingly, the unjust enrichment claim is wholly premised on and duplicative of the very same factual allegations and theory of liability as relied upon by Mitchell's other claims.  *See, e.g.*, *Beers*, 2022 WL 493555, at *7 (dismissing identical unjust enrichment claim as duplicative); *Colpitts*, 527 F. Supp. 3d at 591–92 (same and collecting cases); *Cosgrove*, 520 F. Supp. 3d at 587–88 (same).[20]  Therefore, Whole Foods' motion to dismiss Mitchell's unjust enrichment claim is granted.

### G.       Standing to Pursue Injunctive Relief

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  "[I]n order to have Article III standing, a plaintiff must adequately establish:  (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Id.* at 273–74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish the first element of standing – an injury in fact – the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

---

[20] Mitchell argues that to the extent he cannot adequately plead his other claims, he asserts his unjust enrichment claim in the alternative.  Notwithstanding this argument, his failure to allege that his unjust enrichment claim is not duplicative of his other claims requires dismissal.  *Campbell*, 516 F. Supp. 3d at 394 n.15 (dismissing unjust enrichment claim as duplicative where the plaintiff asserted claim in the alternative).

and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

"Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he] is likely to be harmed again in the future in a similar way."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury."  *Nicosia*, 834 F.3d at 239 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to seek injunctive relief."  *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17 Civ. 5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018)).  Thus, a plaintiff's failure to allege an actual intent to purchase the product again amounts to a failure to establish a likelihood of future injury sufficient to show standing.  *Cosgrove*, 520 F. Supp. 3d at 574 (citing *Lugones*, 440 F. Supp. 3d at 239).

Mitchell alleges that had he known the truth about the Product, he would not have purchased it or he would have paid less for it.  ¶ 60.  He further alleges that he "will purchase the Product again when he can do so with the assurance that [the] Product's representations . . . are consistent with its labeling."  ¶ 79.  Therefore, he makes the conditional promise to only purchase the Product again if the allegedly misleading representations are consistent with the Product.  *See, e.g.*, *Cosgrove*, 520 F. Supp. 3d at 574 (holding that plaintiffs had no standing where they made substantially identical allegations); *Campbell*, 516 F. Supp. 3d at 394–96 (same).  Thus,

Mitchell lacks standing to pursue injunctive relief, because he cannot show that he will be harmed again in the future in a similar way.[21]  Therefore, the Court dismisses Mitchell's request for injunctive relief.

### H.    Leave to Amend

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or to deny leave to amend."  *McCarthy v. Dun & Bradstret Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  797 F.3d 160, at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)).

Mitchell has already amended the complaint twice, after having the benefit of Whole Foods' pre-motion letters stating the grounds on which it would move to dismiss.  *See* Docs. 9, 15.  Furthermore, he has not proposed any specific amendments to the complaint to cure the specified pleading deficiencies.  *See, e.g.*, *Lorely*, 797 F.3d at 190 (noting that leave may be denied "where the request gives no clue as to how the complaint's defects would be cured" (citation and internal quotation marks omitted)); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming denial of leave to amend where plaintiff had not indicated how it could cure its pleading deficiencies).  Nevertheless, in accordance with the liberal spirit of Rule 15, the Court grants Mitchell leave to amend.

---

[21] "A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  Because Mitchell does not have standing to seek injunctive relief on behalf of himself, he does not have standing to seek injunctive relief on behalf of a putative class.  *Lugones*, 440 F. Supp. 3d at 239 n.6 (citing *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 527 (S.D.N.Y. 2018)).

**IV.     CONCLUSION**

For the reasons discussed above, Whole Foods' motion to dismiss is GRANTED.

Mitchell is directed to file an amended complaint, if at all, by March 18, 2022.  If he does not,

the case will be closed.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 21.

It is SO ORDERED.

Dated:     March 4, 2022
              New York, New York

_____
                    EDGARDO RAMOS, U.S.D.J.